OROSCO et al. v. TEXAS EMPLOYERS' INS. ASS'N et al. (No. 1215.)

(Court of Civil Appeals of Texas. Beaumont, May 14, 1925. Rehearing Denied June 3, 1925.)

1. Master and servant ⬥⇒405(5)—Finding of wife's abandonment of husband held supported by evidence.

Evidence *held* to support finding of wife's abandonment of husband for three years prior to his death, so as to foreclose her right to compensation under Vernon's Ann. Civ. St. Supp. 1918, art. 5246—15.

2. Master and servant ⬥⇒417(5)—Failure to define abandonment without good cause held without error.

Where no excuse was offered by wife in compensation proceeding for abandoning her husband more than three years prior to his death, failure of court to define "without good cause," within Vernon's Ann. Civ. St. Supp. 1918, art. 5246—15, was without error.

3. Master and servant ⬥⇒404—Evidence that by general repute wife of deceased had lived with another as his wife properly received.

Where wife claimed compensation for death of husband, there was no error in receiving evidence that, by general repute, she was living with her cousin as his wife, evidence having relation to a time long after her alleged abandonment of husband.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Proceeding under the Workmen's Compensation Law by Emilia Cortez de R. Gomez Orosco and Carmen Gomez, claimants for death of Manuel Gomez, opposed by the Texas Employers' Insurance Association, the insurer. From an award of compensation by the Industrial Accident Board, the insurer appealed to the district court, where judgment was entered against both claimants, and compensation awarded to natural daughter of deceased, and first claimant named and another appeal. Affirmed.

Howth, Adams & Hart, David E. O'Fiel, and A. D. Lipscomb, all of Beaumont, and Randolph Carter and J. Tom Haltom, both of San Antonio, for appellants.

Oswald S. Parker and R. E. Masterson, both of Beaumont, and Reynolds & O'Neal, of Port Arthur, for appellees.

WALKER, J. While in the due course of his employment with the Texas Company, which carried workmen's compensation with appellee, the Texas Employers' Insurance Association, one Manuel Gomez suffered death under circumstances giving his surviving dependents the right to compensation. Immediately upon his death, a woman with whom he had been living for about 17 years filed a claim for compensation with the Industrial Accident Board, but, in proving her claim, made the following statement:

"Port Arthur, Texas, September 16, 1922.

"Industrial Accident Board, Austin, Texas— Your letter of August 8 requires me to submit whatever evidence I have in the Manuel Gomez vs. Texas Company Case, as appears on the copy, and in the certificate attached to it. Manuel Gomez and I were not legally married. Manuel Gomez was also known by the name of Regino Gomez. As far as I know, Mr. Gomez' former wife's name was Emilia Lopez."

Through the Mexican consular office, the woman, Emilia, was notified of the death of Gomez, and duly filed her application for the compensation, which was allowed as against the claim of Carmen Gomez. Thereupon Carmen and the Texas Employers' Insurance Association gave notice of appeal from the award, but the appeal was perfected only by the Association, to which suit the other parties at interest were made parties as required by law.

Chonita Pro, a daughter of the woman Carmen and of Gomez, born to them while they were living together, was also made a party.

Upon the trial of the case, it was shown that Carmen and Manuel Gomez, who was known in Mexico as Regino Gomez, lived together as neighbors, Carmen with her husband, and Regino with his wife, the woman Emilia. In 1905 or 1906, Carmen deserted her husband, and came to Texas with Gomez and lived with him as his wife until his death in 1922. Gomez and Emilia were married in 1895, 1896, or 1897. The facts raised the issue that at one time Emilia deserted her husband and came over to Texas for a short period with another man, but when she returned Gomez received her back into his home, and that she lived with him as his wife for three or four weeks. The evidence also raised the issue that she again deserted Gomez in 1901 or 1902, and went to the home of one of her cousins, with whom she lived from that time up until about 1914. Another cousin testified upon the trial of this case that when Gomez left in 1905 or 1906, Emilia was a "widow." There was also testimony to the effect that she was reputed to be the wife of her cousin with whom she was living; that she was seen at his home; that they were often seen out together on the streets. Without further quoting from the record, it is our judgment that the issue was raised that Emilia lived constantly with her cousin in improper relations from 1902 until 1914. About 1915, she came to Texas and was legally married to another man, with whom she was living at the time this case was tried. She prosecuted her claim before the Industrial Accident Board under the name of Gomez, and did not reveal the fact that she had been

married in 1915, nor that she had lived with her cousin from 1902 until 1914. However, it is fair to her theory of the case to say that she testified that she had never had improper relations with any man; that she lived with her mother from 1906 until she married in 1915; that she did not desert Gomez, but that he deserted her. She in no way criticized Gomez as a husband during the time she was living with him. If, in fact, she did abandon him in 1902, she offered no excuse for it, and placed no blame for her conduct upon Gomez. There was evidence to the effect that a female relative was keeping house for him at the time he came to Texas with Carmen, and that Emilia had not lived with him as his wife from 1902 until the time of his death. Interrogatories Nos. 1 and 2 submitted to the jury were as follows:

"(1) Did the defendant Emilia Cortez de R. Gomez ever after her marriage to Manuel Gomez in Zaragoza, Mexico, on or about the 8th day of April, 1895, at any time thereafter without good cause abandon such a marriage relation, intending to never live with said Manuel Gomez as his wife again?"—to which the jury answered: "Yes."

"(2) Did the defendant Emilia Cortez de R. Gomez, without good cause, abandon Manuel Gomez as her husband for three years prior to June 15, 1922?"—to which the jury answered: "Yes."

On the answers to these two questions, and on the other questions submitted to the jury, judgment was entered against both Emilia and Carmen, but in favor of the daughter, Chonita Pro, for the compensation. Emilia and her present husband are the only ones prosecuting this appeal from that judgment.

Opinion.

[1] From our review of the evidence it is our conclusion that issues Nos. 1 and 2, supra, were raised and the jury's answers thereto fully supported by the evidence. It follows, under article 5246—15, Vernon's Ann. Civ. St. Supp. 1918, "The compensation provided for in the foregoing section of this act shall be for the sole and exclusive benefit of the surviving husband who has not for good cause and for a period of three years prior thereto abandoned his wife at the time of the injury, the wife who has not at the time of the injury without good cause and for a period of three years prior thereto abandoned her husband," that the answers of the jury to questions Nos. 1 and 2, supra, have foreclosed Emilia's right to the compensation, and, since the other claimants have not appealed from the judgment, Emilia is not in position to raise any issue as to the correctness of the judgment as between the Texas Employers' Insurance Association and Chonita Pro.

[2] The court did not err in failing to define the expression "without good cause," as used in article 5246—15, supra. No excuse was offered by Emilia for deserting her husband in 1902 or 1903, if, in fact, she did desert him. Since the evidence raised the issue that in fact she did desert her husband, and went to the home of another man, with whom she lived continuously for many years, a definition of good cause would have been a mere abstract question, in the absence of some circumstance justifying her in leaving the bed and board of her lawfully wedded spouse.

[3] The court did not err in receiving evidence to the effect that by general repute Emilia was living with her cousin as his wife. This evidence had relation to a time, even under appellants' own statement of the case, long after 1902 or 1903.

Finding that no error was committed as against the woman Emilia, it is our order that the judgment of the trial court be and the same is hereby in all things affirmed.